## Russell vs. Gray and Margerson.

Where, upon the trial of a replevin suit, the defendants recover a judgment for the value of the property, and they subsequently collect the same, such judgment and satisfaction, by operation of law, will transfer the title to the property to the plaintiff; and in an action of trespass brought by him against the defendants, for taking and carrying away the property, the defendants will be estopped from disputing the plaintiff's title.

As between the parties to process, and their privies, the return of a ministerial officer, stating his official doings in the execution of that process, is, with some exceptions, conclusive evidence.

Defendants in a replevin suit, after having recovered the property, or its value, on the ground that the sheriff has delivered it to the plaintiff, will not be allowed to defeat an action of trespass brought by the latter against them, for taking and carrying away the property, by impeaching the return upon which they have so recovered.

The 17th section of the replevin act, (2 R. S. 525,) was enacted for the benefit of the sheriff, and not of the party. The indemnity therein mentioned is for his security, and what shall be the extent and form of it, is for him, and no one else, to determine.

As soon as the inquisition is found by the jury, under that section, it becomes a question exclusively for the sheriff to decide, to which party he will deliver the property; or, if he delivers it to the plaintiff, what indemnity he will require.

This was an action of trespass for taking and carrying away a span of horses, sleigh and harness. It was tried at the Greene circuit in June, 1850, before Mr. Justice Wright. The property in question, with other property, was taken by the sheriff of Greene in January, 1847, by virtue of a writ of replevin issued by the plaintiff in this suit against the defendant Gray and two others. A claim of property, interposed by the defendants in the replevin suit, was tried on the first day of February, and decided by the jury in favor of the claimants. A bond of indemnity, bearing date the same day, was executed by the plaintiff and one surety, and delivered to the sheriff on the 7th or 8th of February. The affidavit of justification, indorsed upon the bond, was made on the 4th of February. On the 4th of March, 1847, the sheriff delivered the property to the plaintiff's agent. The sheriff made the following return to the writ: "I do hereby certify and return to the within writ, that I took the within

Russell *v.* Gray.

specified goods and chattels in order to make delivery thereof to the plaintiff within named; but before such delivery was made, Alexander Kiersted, Norman H. Gray and William Ford claimed the same, and demanded that such claim should be tried by a jury. Whereupon a jury was called by me, and such jury, under their oaths, made and returned to me the inquisition annexed hereto, by means whereof I could not replevy and make delivery thereof as within commanded, until the said plaintiff within named, together with John Johnson, executed to me a second bond in the penalty of twelve hundred dollars, that being at least double the value of said goods and chattels appraised by Peter Moe, and in the sum required by law, and thereupon, on the execution and delivery to me of said last mentioned bond as aforesaid, whereby I was indemnified to my satisfaction, and on plaintiff's refunding to the claimants the fees of the sheriff and the jury for trying such claim, I did replevy and make delivery to the plaintiff in the said writ, by Solomon Cooke his agent, of the said goods and chattels as within I am commanded. And I do hereby certify that the sureties in the replevin bond given to me by the within named plaintiff, were John Johnson of the city of Brooklyn, and county of Kings, and James M. Neely, of the same place, and I have also duly caused the within named defendants to be summoned to appear according to the exigency of the within writ. Robert Fuller, sheriff, by B. O. Stone, deputy."

The next day after the property was delivered to the plaintiff's agent, the defendants went to him and took it from him forcibly.

Upon the trial of the cause the circuit judge decided that the return of the sheriff to the writ of replevin could not be used as evidence to prove, and did not prove, even *prima facie*, that the sheriff was indemnified after the jury had returned their inquisition. To this decision the plaintiff's counsel excepted. The plaintiff's counsel also objected to the evidence offered to prove that the bond of indemnity was delivered to the sheriff several days after the inquisition, on the ground that the evidence was immaterial, and also on the ground that the sheriff's return was

Russell *v.* Gray.

conclusive, and could neither be contradicted nor explained by parol. The objection was overruled, and the plaintiff's counsel excepted to the decision.

The testimony being closed, the court decided that the execution of the writ of replevin was imperfect, and that, it appearing that the claim of property had been tried and found in the claimants, and the new bond of indemnity not having been delivered to the deputy sheriff until seven days after such trial, it came too late; that the plaintiff had therefore failed to show such an interest in the property as to entitle him to maintain the action. The plaintiff was therefore nonsuited.

*E. Cooke,* for the plaintiff.

*John Adams,* for the defendants.

*By the Court,* HARRIS, J. It was assumed upon the trial, by the counsel for both parties, that upon the trial of the replevin suit, the title to the property in question had been found to be in the defendants in that suit, and that they had recovered judgment therefor. If, as it was alledged and not denied upon the trial, the defendants, upon the trial of the replevin suit, recovered judgment for the value of the property, and have collected that judgment, such judgment and satisfaction, by operation of law, transferred the title to the property to the plaintiff. It is upon the principle that *solutio pretii emptionis loco habetur.* (2 *Kent,* 387, *and cases there cited.*) Assuming the fact to be that the defendants had been satisfied for the value of the property, I do not see why the defendants in this action were not estopped from disputing the plaintiff's title. But, as this fact seems rather to have been assumed than admitted, it may be proper to examine the case without reference to the result of the replevin suit.

The return of a ministerial officer, upon returnable process, stating his official doings in the execution of that process, is *prima facie* evidence of the facts stated therein; even in an action between third persons, and where those facts come collat-

Russell *v.* Gray.

erally in question. (1 *Phil. Ev.* 391.) It is so because it is the official act of a man acting under oath. (*Hyskell* v. *Given*, 7 *Serg. & R.* 371. *Dutton* v. *Tracy,* 4 *Conn. R.* 79.) There are cases in which such a return is held to be not only *prima facie*, but conclusive evidence against those who were neither parties nor privies to the process upon which it was made, but generally, such persons, when affected by it, are at liberty to contradict or vary its effect by other proof.

As between the parties to the process and their privies, the return is, with some exceptions, conclusive evidence. In the replevin suit neither party would be at liberty to question the caption and delivery of the property as stated in the return. If false, direct proceedings might have been taken to correct it, or an action might have been sustained by the party injured by its falsity. But in that action the parties were bound by the facts stated, so far as they related to official acts. Thus, the return was conclusive evidence that the property had been delivered to the plaintiff, so that the defendants, if they succeeded in the action, would be entitled, as a matter of right, to a judgment for the return of the property, or, if they elected, for its value. The return being thus conclusive against the plaintiff, ought, in justice, to be equally conclusive in his favor. If he is made liable for the property in consequence of the delivery proved by the return, the same evidence ought to be conclusive in his favor, against the same parties, or their privies. Nothing could be more unjust than to allow the defendants in the replevin suit, after they have recovered the property, or its value, on the ground that the sheriff had delivered it to the plaintiff, to defeat this action by impeaching the return upon which they had so recovered. No rule of evidence, properly applied, can produce such a result. The defendant Gray was a party to the replevin suit. It does not appear that the other defendant had or claimed any interest in the property. Under these circumstances, I think the return should be regarded as conclusive evidence between the parties to this suit. (*See Baker* v. *McDuffie*, 23 *Wend.* 289.)

But let it be assumed that the evidence to show that the bond

of indemnity was in fact received by the sheriff seven or eight days after the claim of property was tried, was properly received, still I think the plaintiff ought not to have been nonsuited. As I understand it, the 17th section of the replevin act (2 *R. S.* 525) was enacted for the benefit of the sheriff, and not the party. The revisers, in their note to the section, state that it was framed in conformity to the law applicable to the seizure of property upon execution. In such case, if a third person claimed the property, a writ *de proprietate probanda* was executed, and if the jury found that the property belonged to the claimant, the sheriff was not bound to proceed without indemnity. So here, the sheriff, after taking possession of the property, is required, if a claim of property is interposed, to detain the property taken, in his own custody, until "the claim is inquired into and decided according to law." He may then, *if indemnified to his satisfaction*, deliver the property to the plaintiff, notwithstanding the jury have found in favor of the claim, upon his refunding the expense of the inquisition. What shall be the extent and form of this indemnity is for the sheriff, and no one else, to determine. It is for his security, not that of the party. Unlike the bond taken upon the receipt of the writ, no provision is made for the assignment of this indemnity to the defendant. No action is given to any other party upon it. The chief use of the provision seems to be to enable the sheriff to protect himself against any liability he may incur to any person, not a party to the suit, who may chance to own the property. This view of the effect of the statute derives some support from the 18th section, which imposes a penalty upon the sheriff for delivering the property after it has been claimed, and *before* inquisition, but none for delivering it *after* inquisition and without indemnity. If he should choose to take this risk after the decision upon the claim, the legislature evidently thought it not worth its while to protect him against it. (*See Spencer* v. *McGowen,* 13 *Wend.* 256.) If I am right in this construction of the statute, it follows that as soon as the inquisition was found, it became a question exclusively for the sheriff to decide to which

party he would deliver the property; or if he would deliver it to the plaintiff, what indemnity he would require.

How it happened that more than a month elapsed before the property was delivered by the sheriff, does not appear. If it was the fault of the sheriff he undoubtedly rendered himself liable for any damages incurred by the delay. It was his duty to determine, at least within a reasonable time after the decision of the jury upon the claim, to which of the parties he would deliver the property. But until such delivery the property was in the custody of the law, and if the defendants in the replevin suit proceeded to sell it upon execution, that sale was illegal. I am of opinion that the motion to set aside the nonsuit should be granted.

[ALBANY GENERAL TERM, September 1, 1851. *Harris, Parker* and *Wright*, Justices.]